UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PEDRO CRISTIAN FERNANDEZ-BRAVO,  :
     Plaintiff,                   :
                                   :
v.                                :              3:12-cv-01103-WWE
                                   :
TOWN OF MANCHESTER,         :
CHIEF MARC L. MONTMINY,     :
OFFICER MARIA GARAY,        :
SERGEANT JOHN MASTON, and  :
CLAUDIA ROJAS             :

**<ins>MEMORANDUM OF DECISION ON DEFENDANTS'</ins>**
**<ins>MOTION FOR SUMMARY JUDGMENT</ins>**

This is an action by Pedro Cristian Fernandez-Bravo against the Town of Manchester,

Connecticut; Chief of Police Marc L. Montminy; Officer Maria Garay; Sergeant John Maston;

and plaintiff's ex-wife, Claudia Rojas.  Plaintiff alleges unlawful detentions, arrests and seizures

in violation of the Fourth and Fourteenth Amendments against Garay and Rojas (Count I);

unlawful detentions, arrests and seizures in violation of Article 1, Sections 7 and 9 of the

Connecticut Constitution against Garay and Rojas (Count II); violation of substantive due

process in violation of the Fourteenth Amendment against Garay and Rojas (Count III);

deprivation of First and Fourteenth Amendment rights to speech and to petition the government

against Garay, Rojas, and Maston (Count IV); deprivation of rights to free speech under Article I,

Sections 4, 5, and 14 of the Connecticut Constitution against Garay, Rojas, and Maston (Count

V); abuse of criminal process against Garay, Rojas, and Maston (Count VI); malicious

prosecution against Garay and Rojas (Count VII); conversion of personal property against Rojas

(Count VIII); statutory theft of personal property against Rojas (Count IX); intentional infliction

of emotional distress against Garay and Rojas (Count X); civil conspiracy against Garay and

Rojas (Count XI); policies or customs of deliberate indifference to the constitutional rights of citizens, residents, and visitors against the Town and Montminy (Count XII).

Defendants Town of Manchester, Montminy, Maston, and Garay have moved for summary judgment as to plaintiff's complaint in its entirety.

## BACKGROUND

The following undisputed facts are gleaned from the parties' statements of fact, affidavits, deposition transcripts, and other exhibit documentation.

Pedro Cristian Fernandez-Bravo and Claudia Rojas were married in Chili in the early 1990s. The couple moved to the United States in March 2001 and divorced in 2006.

In 2008, Fernandez-Bravo was arrested as a result of a domestic violence incident involving Rojas. On June 11, 2008, Rojas obtained a protective order against Fernandez-Bravo. The order was modified on October 6, 2008, to indicate that Fernandez-Bravo refrain from: imposing any restraint upon the person or liberty of the protected person; threatening, harassing, stalking, assaulting, molesting, sexually assaulting or attacking the protected person; entering the family dwelling, the dwelling of the protected person or wherever the protected person shall reside; and entering the place of employment of the protected person.

On April 29, 2009, at 12:15 p.m., Fernandez-Bravo e-mailed Rojas, "TICK TOCK, time is running out; don't let your cowardice and that stupid loyalty to Mery continue to interfere with your future. Think about this: a real friend never would have allowed or supported something like that. Tick tock, my actions will be taken based on the same affection, loyalty, respect and, above all, consideration that you had for me. Tick tock, accept your responsibility. Don't continue with that pathetic attitude; be honest and go back to being the woman you were. In

2

Noewish, you learned how to lie, deceive, and bring out the worst in yourself. DON'T YOU THINK THAT IT'S TIME TO DO THE RIGHT THING, AND THAT EVERYONE ALWAYS PAYS FOR THEIR MISTAKES? DON'T MAKE ME YOUR EXECUTIONER; IT'S ENOUGH FOR ME THAT YOU'VE BEEN THE EXECUTIONER OF YOUR ENTIRE FAMILY."

On April 29, 2009, at 12:32 p.m., Fernandez-Bravo e-mailed Rojas, "I BET NOW YOU WOULD GIVE ANYTHING TO INVEST THE TIME THAT YOU SPENT IN NORWICH WITH US. LEARN THAT WHEN YOU'RE GIVEN ADVICE, YOU HAVE TO TAKE IT...WHEN YOU DECIDE TO DO THE OPPOSITE OF WHAT YOUR FAMILY DECIDES, THINGS HAPPEN AND THERE ARE CONSEQUENCES...NOW IT'S THE SAME THING, TRY TO PAY ATTENTION TO ME THIS TIME, BECAUSE THERE WILL BE CONSEQUENCES FOR YOU, LIKE LONELINESS, DEPRESSION, AND REGRET...TAKE MY ADVICE; LET YOUR HEART, NOT YOUR COWARDICE, CONTROL YOUR LIFE. FOLLOW MY ADVICE AND YOU'LL BE ABLE TO OVERCOME THIS....THERE ARE THINGS THAT ARE IRREVERSIBLE....THERE ARE THINGS THAT YOU CAN CHANGE.....TICK TOCK, TICK TOCK, TIME IS RUNNING OUT ON YOU; I WON'T CHANGE MY STANCE...I'M SORRY THAT YOU PLAYED WITH FIRE AND GASOLINE....DIDN'T YOU EVER THINK THAT YOU COULD GET BURNED???..."

On April 29, 2009, at 12:38 p.m., Fernandez-Bravo e-mailed Rojas, "MY ENEMIES CHOOSE NOT TO GO A SECOND ROUND WITH ME, I TOLD YOU FOR YEARS THAT I DON'T LIKE BEING BETRAYED...AND YOU DID IT. SALVAGE THIS SITUATION BY DOING THE RIGHT THING."

On April 29, 2009, at 12:45 p.m., Fernandez-Bravo e-mailed Rojas, "HERE GOES:

3

HAVE YOU HEARD THE PHRASE ONE WORD FROM YOU WILL BE ENOUGH TO

CURE ME. MAYBE ONE LIE FROM YOU CAN CURE ME AND ONE FROM ME CAN

CURE YOU BUT WE HAVE TO BEGIN BY BEING HONEST; EXAMINE YOURSELF

NOW, BECAUSE THERE'S ONLY A DAY AND A HALF LEFT."

On April 29, 2009, at 2:53 a.m., Fernandez-Bravo e-mailed Rojas, "tick tock tick

tock...Friday is still the deadline." He also wrote, "In other words, Friday morning will be late.

Remember that we have to talk for at least 3 hours in order to solve the problems; if you don't

want to, fine, but...tick tock, tick tock, tick tock, tick, tock, tick tock, time is flying and running

out, and my determination and Tatan's are solid as a rock."

On May 4, 2009, at 8:44 a.m., Fernandez-Bravo e-mailed Rojas, "…Plus, the second

phase, which is going to make your hair stand on end when you find out. Claudia, I'm a very

determined person, and I want you to be one now too. Don't sacrifice yourself for a lie, tell me

the truth, and we'll see what happens. I can't promise you anything; I just tell you that Tatan is

fully aware of all of the investigations, and he's also fully aware of your answers; just imagine

what the boy thinks when they don't fit. Don't make me destroy you, I don't want to, I don't

want to, I don't want to, I want you to gather your courage (just like when you came to an

agreement with that son of a bitch) and call me. The deadlines that I'm giving are irreversible,

and I won't give up on achieving my objective; if necessary, I'll sacrifice innocent parties just

like you did. Claudia, think about it, because you've realized that I'm not playing

around...believe me, believe me, I'm not playing around..."

On June 15, 2009, Rojas met with Officer Maria Garay at the Manchester Police

Department to get help concerning the e-mails from Fernandez-Bravo.  Rojas told Garay that

when she read the e-mails, she began to lose weight and sleep due to stress.  The two discussed

the possibility of Fernandez-Bravo tracking the location of Rojas's cell phone.  Garay obtained

the protective order against Fernandez-Bravo and determined that it was active and in full effect.

Rojas provided a sworn statement detailing her concerns.

On July 2, 2009, Fernandez-Bravo told Rojas that their son was at Manchester Hospital

when, in fact, he was in a clinic in Vernon, Connecticut.

On July 3, 2009, Garay went to Fernandez-Bravo's residence to speak with him about the

e-mails.  Fernandez-Bravo admitted to sending them.

On July 15, 2009, Garay submitted a warrant application for the arrest of Fernandez-

Bravo.  The warrant was signed by Judge Ward the same day, and Garay called Rojas to notify

her that the court order had arrived.  Fernandez-Bravo was arrested on July 15, 2009.  Sergeant

John Maston set Fernandez-Bravo's bond at $250,000.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any

material fact and it is clear that the moving party is entitled to judgment as a matter of law.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not

differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923

F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual

issue genuinely in dispute.  American International Group, Inc. v. London American International

Corp., 664 F.2d 348, 351 (2d Cir. 1981)  In determining whether a genuine factual issue exists,

the court must resolve all ambiguities and draw all reasonable inferences against the moving

party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of

his case with respect to which he has the burden of proof, then summary judgment is appropriate.

Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely

colorable," legally sufficient opposition to the motion for summary judgment is not met.

Anderson, 477 U.S. at 249.

**FOURTH AMENDMENT SEARCH AND SEIZURE (Counts I and II) and MALICIOUS PROSECUTION CLAIMS (Count VII)**

Defendants argue that plaintiff's Section 1983 claim for false arrest should fail because of

the existence of probable cause.  "Because probable cause to arrest constitutes justification, there

can be no claim for false arrest where the arresting officer had probable cause to arrest the

plaintiff."  Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004).  Similarly, defendants argue that

lack of probable cause is fatal to a malicious prosecution claim under state law and Section 1983.

See Smith v. Edwards, 175 F.3d 99, 105 (2d Cir. 1999).  "Once probable cause to arrest has been

established, claims of malicious prosecution survive only if, between the arrest and the initiation

of the prosecution, the groundless nature of the charges is made apparent by the discovery of

some intervening fact."  Smith v. Tobon, 529 Fed. Appx. 36, 38 (2d Cir. 2013).

Plaintiff argues that a warrant would not have been issued but for defendants' false

statements and material omissions disclosed to the issuing magistrate judge.  See id. ("A plaintiff

can demonstrate that this right was violated where the officer knowingly and intentionally, or

with reckless disregard for the truth, made a false statement or omitted material information, and

where such false or omitted information was necessary to the finding of probable cause.").

6

Accordingly, the Court's determination turns on whether under plaintiff's version of the facts a "corrected affidavit" would have supported probable cause.  Id.  "If probable cause remains, no constitutional violation of the plaintiff's Fourth Amendment rights has occurred."  Soares v. State of Conn., 8 F.3d 917, 920 (2d Cir. 1993).  The standard for probable cause is "objective evidence of a fair probability that proscribed activity has occurred."  State v. Heinz, 193 Conn. 612, 617 (1984).

Plaintiff contends that defendants omitted from their warrant application evidence of emails from Rojas wherein she demanded money and threatened to make false accusations to the police.  Plaintiff further contends that Garay did not know or understand the meaning behind the emails that he had sent to Rojas in that the emails referred to an immigration complaint he was going to file against Rojas in order to protect himself from her threats and harassment.  Plaintiff proffers that he showed Garay the contents of his binder that contained his immigration complaint against Rojas.  Nevertheless, plaintiff submits that the reason he sent Rojas 27 emails at issue was that he and Rojas were peacefully chatting back and forth.  Plaintiff argues that Garay removed from her affidavit plaintiff's statement to her that Rojas was emailing him and that he was merely responding.  Finally, plaintiff argues that none of his emails to Rojas made overt threats of physical harm.  The Court is not persuaded.

It is plain that the emails plaintiff admits to sending were threatening communications.  Taken together, they clearly constitute harassment in violation of the protective order.[1]

---

[1] See, e.g.,"DON'T MAKE ME YOUR EXECUTIONER;" "TICK TOCK, TICK TOCK, TIME IS RUNNING OUT ON YOU; I WON'T CHANGE MY STANCE...I'M SORRY THAT YOU PLAYED WITH FIRE AND GASOLINE....DIDN'T YOU EVER THINK THAT YOU COULD GET BURNED???" "MY ENEMIES CHOOSE NOT TO GO A SECOND ROUND WITH ME," "Don't make me destroy you," "if necessary, I'll sacrifice innocent parties just like you did. Claudia, think about it, because you've realized that I'm not playing around...believe me, believe me, I'm not playing around..."

Putting aside all other allegedly false, inculpatory information and supplying all of plaintiff's allegedly omitted information, a finding of probable cause would still be supported.  It is not a close call.  Moreover, no intervening fact rendered the charges against plaintiff groundless, so plaintiff's claim of malicious prosecution cannot stand.  Any supervisory liability stemming from a duty to intervene is obviated by a lack of underlying constitutional violation.

Having established probable cause, it is clear that the individual defendant officers are entitled to qualified immunity.  Moreover, immunity extends to the remainder of plaintiff's claims against the individual defendant officers, as those claims flow from the false arrest claim (see, e.g., substantive due process, free speech, and intentional infliction of emotional distress).  Probable cause having been established, plaintiff may not overcome qualified immunity merely by suggesting alternative, impermissible motivations on behalf of the government officers.  "So long as a defendant has an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity."  Spavone v. New York State Dept. of Correctional Services, 719 F.3d 127, 135 (2d Cir. 2013).

**QUALIFIED IMMUNITY**

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To lose immunity, an official must violate a right, the contours of which are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  The Supreme Court has repeatedly stressed the importance of resolving the qualified immunity determination at the earliest possible stage in the litigation.

Hunter v. Bryant 502 U.S. 224, 227 (1991).

"A police officer is entitled to qualified immunity if (1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." Hartline v. Gallo, 546 F.3d 95, 102 (2d Cir. 2008).

The Second Circuit has "developed a standard for determining whether an officer is entitled to qualified immunity that is forgiving and protects all but the plainly incompetent or those who knowingly violate the law." Amore v. Novarro, 624 F.3d 522, 530 (2d Cir. 2010). "In an unlawful arrest action, an officer is immune if he has arguable probable cause, and is subject to suit only if his judgment was so flawed that no reasonable officer would have made a similar choice." Provost v. City of Newburgh, 262 F.3d 146, 160 (2d Cir. 2001).

In the instant case, as discussed above, defendants had more than arguable probable cause to arrest plaintiff for violating the protective order.  Accordingly, the individual officers are immune from suit for false arrest.  Moreover, such immunity extends to plaintiff's remaining claims against the defendant officers, as under the circumstances of this case, they held objectively reasonable beliefs that their actions were lawful.

**CONNECTICUT STATE CONSTITUTIONAL CLAIMS (Count II)**

Defendants argue that plaintiff's state constitutional tort claims fail as a matter of law because plaintiff has failed to demonstrate evidence of conduct sufficiently severe to necessitate an alternative, *Bivens*-style remedy.  See Binette v. Sabo, 244 Conn. 23, 48 (1998).  Plaintiff was arrested pursuant to a valid arrest warrant supported by probable cause.   His state constitutional claims arise from the same set of actions that allegedly violated his Fourth Amendment rights.

9

Qualified immunity will be granted with regard to these claims.

### SUBSTANTIVE DUE PROCESS CLAIM (Count III)

Defendants argue that plaintiff's substantive due process claim should fail in light of alternative, explicit textual sources of protection provided by the constitution.  In such cases, "where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process."  Velez v. Levy, 401 F.3d 75, 94 (2d Cir. 2005).

Plaintiff's due process claims stems from the same allegedly false statements and material omissions that supported the false arrest claim.  His "substantive due process claim thus merges with his Fourth Amendment claim because the former claim arises from the same set of actions that allegedly violated his Fourth Amendment rights."  See Maliha v. Faluotico, 286 Fed. Appx. 742, 744 (2d Cir. 2008).  Qualified immunity will be granted with regard to this claim.

### EXCESSIVE BOND CLAIM (Counts IV and V)

Defendants argue that the setting of bond is a judicial act, see Cleavinger v. Saxner, 474 U.S. 193, 206 (1985), and that absolute immunity extends to police officers when they perform that function.  Walczyk v. Rio, 496 F.3d 139, 165 (2d Cir. 2007).  Plaintiff, in effect, responds the bond issue is an element of plaintiff's first amendment retaliation claims.  Summary judgment will be granted as to the excessive bond claim based on both absolute and qualified immunity.

### FREE SPEECH RETALIATION CLAIMS (Counts IV and V)

Defendants argue that plaintiff's First Amendment and state free speech retaliation claims should fail because plaintiff does not have an interest protected by the First Amendment,

defendants' actions were not motivated by his exercise of that right, and the plaintiff's speech was not chilled.  Plaintiff responds that defendants' actions infringed upon his right to file an immigration complaint about his ex-wife with immigration services.  But plaintiff has no specific proof of improper motivation other than his self serving assertions.  Qualified immunity will be granted with regard to these claims.

**ABUSE OF PROCESS CLAIM (Count VI)**

Defendants argue that plaintiff's abuse of process claim should fail because there is no evidence of improper purpose.  See Larobina v. McDonald, 274 Conn. 394, 403 (2005) ("An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed.").  Moreover, even if there was an improper purpose, such purpose was not the primary purpose for the process effected upon plaintiff, as required to establish liability.[2]  Again, plaintiff has no specific proof of improper motivation other than his self serving assertions.  Qualified immunity will be granted with regard to this claim.

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM (Count X)**

Defendants argue that plaintiff's intentional infliction of emotional distress claim should fail because defendant's actions were not sufficiently extreme and outrageous.  See Petyan, 200 Conn. 243, 254, n. 5 (1986) ("The rule which seems to have emerged is that there is liability for

---

[2]"[T]he Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of a legal process against another primarily to accomplish a purpose for which it is not designed.  Comment b to § 682 explains that the addition of primarily is meant to exclude liability when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." Larobina, 274 Conn. at 403-04.

11

conduct exceeding *all bounds* usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (quoting Prosser & Keeton, Torts (5th Ed.) § 12, p. 60.)).  The Court agrees.  Moreover, this claim arises from the same set of actions that allegedly violated plaintiff's Fourth Amendment rights.  Qualified immunity will be granted with regard to this claim.

### CIVIL RIGHTS CONSPIRACY CLAIM (Count XI)

Defendants argue that plaintiff's civil rights conspiracy claim should fail because there was no agreement between Garay and Rojas, and there was no actual deprivation of a constitutional right.  "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  As plaintiff cannot demonstrate a constitutional injury, his conclusory allegations of conspiracy are insufficient.  Qualified immunity will be granted with regard to this claim.

### MUNICIPAL LIABILITY CLAIM (Count XII)

Defendants argue that plaintiff's municipal liability claim should fail because there has been no underlying constitutional violation, a prerequisite to *Monell* liability.  See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.").  Moreover, defendants contend that plaintiff has no evidence of an unconstitutional custom or policy.  See Ying Jing Gan v. City of New York, 996 F.3d 522, 536 (2d Cir. 1993) ("[M]ere assertion that a municipality has such a custom is

insufficient . . .").  As plaintiff failed to address defendants' arguments as to official capacity claims, the Court will deem those claims abandoned.

### CLAIMS SOLELY AGAINST ROJAS (Counts VIII and IX)

Rojas was not a party to the instant motion, and only state claims against her remain.  The Court will decline to exercise supplemental jurisdiction with respect to plaintiff's conversion of personal property claim against Rojas (Count VIII) and statutory theft of personal property claim against Rojas (Count IX).  The Court will remand the case with its remaining claims *sua sponte*.

### CONCLUSION

Defendants' motion for summary judgment [ECF. No. 74] is GRANTED as to all claims against the Town of Manchester and its police officers.  Plaintiff's claims against Rojas shall be remanded.

Dated this 14th day of December, 2016, at Bridgeport, Connecticut.


    /s/Warren W. Eginton_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE